# McCABE & MACK LLP

**ATTORNEYS AT LAW**

J. JOSEPH McGOWAN
DAVID L. POSNER
ELLEN L. BAKER
SCOTT D. BERGIN
RICHARD R. DuVALL
LANCE PORTMAN
RICHARD J. OLSON
MATTHEW V. MIRABILE
KIMBERLY HUNT LEE
KAREN FOLSTER LESPERANCE
REBECCA M. BLAHUT
IAN C. LINDARS
SEAN M. KEMP
JESSICA J. GLASS
NOELLE M. PECORA
MICHAEL P. BERSAK

63 WASHINGTON STREET
POST OFFICE BOX 509
POUGHKEEPSIE, NY 12602-0509
TELEPHONE: (845) 486-6800
FAX: (845) 486-7621

www.mccm.com

PHILLIP SHATZ
MICHAEL A. HAYES, JR.
HAROLD L. MANGOLD
ALBERT M. ROSENBLATT
THOMAS D. MAHAR, JR.
RALPH A. BEISNER
JESSICA L. VINALL

JOHN E. MACK
(1874-1958)
JOSEPH A. McCABE
(1890-1973)
EDWARD J. MACK
(1910-1998)
JOSEPH C. McCABE
(1925-1981)

DIRECT TELEPHONE: (845) 486-6874
E-MAIL: dposner@mccm.com

December 30, 2011

Hon. Leonard D. Wexler
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, NY 11722-4438

RE:   Dixon v. Village of Hempstead, et al.
      10 CV 3577 (LDW)(ARL)
      Our File No. 12536-0009

Dear Judge Wexler:

McCabe & Mack LLP represents the defendants. I write pursuant to your Honor's rules requesting a pre-motion conference with regard to our desire to move for summary judgment.

The amended complaint ("AC") alleges that during his 30-year career with the Hempstead Police Department ("HPD") Mr. Dixon was the victim of a hostile work environment based upon race (African American). It also alleges retaliation for his EEOC complaint and this suit, and a violation of his procedural due process rights in connection with the non-renewal of his appointment to the position of Assistant Chief of Police upon expiration of his three-year contract.

Mr. Dixon was appointed a police officer in April 1981 (AC ¶13). In 2003, he was promoted to lieutenant, a civil service rank. Upon the recommendation of defendant Wing, and the votes of the four elected defendants, he was appointed Deputy Chief (an internal Village designation) in April 2007 and then Assistant Chief in May 2008. Throughout both appointments he retained his civil service status. When the Assistant Chief contract expired on May 31, 2011, he was not offered a new one, and, effective June 1, 2011, he continued his employment as Lieutenant, assigned as "Watch Commander". He submitted his retirement letter on July 1, effective July 22, 2011.

Defendants Hall, Conyers and Pettus are African American, as were many of their predecessors in office. Defendant Chief Wing is Asian American. From 1973-1986, the HPD was led by Chief Thomas Scott, an African American. For many years a substantial number of its superior officers and officers with

special assignments were and are African American.  Over 50% of the HPD officers are Black.  Since Wing became Chief in April 2007, six of the eight officers promoted to sergeant and six of the twelve officers who made detective have been African American.  The HPD is a model of diversity and plaintiff's career is a prime example of an African American advancing through its ranks.  He achieved its second highest position without being hindered by racial discrimination.

Seeking to avoid the fact that he did not suffer the effects of discrimination, plaintiff alleges an assortment of isolated events separated by decades.  There was "one instance back in the 80's" (¶28) and then another in 2003 (¶31) (which was dealt with appropriately (¶33)), and another in 2006 (¶43-44) (The record will establish that these last three incidents have nothing to do with racial issues).  The AC also alleges a noose was found in the men's locker room in October 2007 (¶76).  The record will demonstrate this incident was immediately turned over to the Nassau County Police and then the Department of Justice/FBI for investigation.  Beyond this, there are isolated allegations of what Mr. Dixon believes were discriminatory decisions with regard to other officers (see, e.g., ¶¶82, 89-90, 151-160), which the record will document as inaccurate and irrelevant.  He also makes numerous allegations against the PBA and the District Attorney, which have nothing to do with his current case (they were dropped as defendants when he filed the AC [¶¶67-69, 80-81, 94-95, 108, 168]).

The allegations that actually deal with him will be shown to be perfectly reasonable and appropriate responses to misconduct and poor judgment on his part which culminated in April 2009 with the administrative assignment to work exclusively on the HPD's efforts to obtain accreditation from New York State.  From its inception through the expiration of his contract on May 31, 2011, he remained Assistant Chief and the terms and conditions of his employment were the same.  He did not suffer an "adverse employment action".  By operation of law, he resumed his lieutenant rank effective June 1, 2011, and voluntarily retired four weeks later.

First, the bulk of Plaintiff's claims must be dismissed as time-barred.  His §1983, First Amendment, and due process claims are governed by a three-year statute of limitations.  His Title VII claims are limited to the 300-day period preceding the filing of his EEOC complaint (February 10, 2010).  At most, his section 1981 claim reaches back four years from the date of the filing of the complaint (August 4, 2010).  The incidents alleged date back nearly thirty years, and all but a small handful of the events discussed in the AC are outside the applicable statutes of limitations.  The continuing violation doctrine will not aid plaintiff.  "[T]he continuous violation exception applies only where discrimination is accomplished through a specific official policy or mechanism, which is not alleged here, (Butts v. City of New York Dept. of Hous. Pres. & Dev., 990 F.2d 1397, 1404 (2d Cir. 1993)) or where "a series of related acts [is alleged] against a single individual. . . .  In the latter instance, the question . . . boils down to whether sufficient evidence supports a determination that the alleged discriminatory acts are related closely enough to constitute a continuing violation." Fitzgerald v. Henderson, 251 F.3d 345, 362 (2d Cir. 2001).  Here, the AC does not allege a specific official policy, nor does it allege a series of closely related acts against the plaintiff, and the record on the motion will establish that neither existed.

Moreover, Plaintiff's Title VII claims must be dismissed to the extent that they are not reasonably related to the allegations contained in his charge of discrimination filed with the EEOC.  The AC contains new allegations and new defendants, yet plaintiff failed to file a new EEOC charge regarding those allegations.  See, e.g., Johnson v. Palma, 931 F.2d 203, 209 (2d Cir.1991).

Plaintiff fails to plead allegations of a racially hostile work environment that satisfy the requirements of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  He

December 15, 2011
Page 3

alleges a spattering of isolated incidents over a 30-year period, far from the severe and pervasive conduct required to establish a hostile work environment. See, e.g., Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir.1995). Nor will he be able to prove that the terms and conditions of his work were altered, or that he suffered adverse employment action. Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir.2000). To the contrary, the AC tells the story of plaintiff's remarkable success in the workplace and his accession up the ranks of the police department. His final promotion, to second in command, occurred in May 2008, after the so-called "noose incident", which was the most recent of the events alleged in the AC. The record will establish that he did not suffer a hostile work environment and that there were legitimate non-discriminatory motives for the employment decisions that were made.

With regard to Plaintiff's due process claim, the AC fails to state a cause of action because Plaintiff had no protected property interest in his contractual position as Assistant Chief. While it is true that public employees have a property interest in their civil service appointments, Plaintiff's civil service appointment at all relevant times was that of lieutenant, an appointment that remained unchanged until the date of his voluntary retirement. Plaintiff had no protectable property interest in obtaining a new contract as Assistant Chief upon the initial agreement's expiration. Moreover, he had an adequate state law remedy to redress the perceived wrongs. Locurto v. Safir, 264 F.3d 154, 171 (2d Cir. 2001) (procedural due process satisfied by notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards). His due process claim must be dismissed.

With respect to his First Amendment claim, the AC is so vague and non-specific that it falls far short of the requirements of Twombly and Iqbal. Moreover, the only "speech" he engaged in was "calculated to redress personal grievances" rather than on matters with a "broader public purpose." Ruotolo v. City of New York, 514 F.3d 184, 189 (2d Cir. 2008); Garcetti v. Ceballos, 547 U.S. 410 (2006).

Finally, Plaintiff's retaliation claim must fail on the record that will be before the court on the motion. Plaintiff alleges that he was stripped of his authority and his contract was not renewed in retaliation for his EEOC Complaint and for this lawsuit. However, Chief's Wing's order was issued in April 2009, well prior to both the EEOC complaint and the lawsuit. (¶122). As the record will show, this followed a series of incidents involving Plaintiff's abuse of authority, interference with an ongoing investigation, intimidation of witnesses, and insubordination. Not only do the allegedly retaliatory actions pre-date plaintiff's complaints, but the legitimate non-discriminatory reasons for what occurred are well documented.

Defendants therefore respectfully request a pre-motion conference at the Court's earliest convenience.

Respectfully yours,

McCABE & MACK LLP

DAVID L. POSNER

cc:   Eric Sanders, Esq./The Sanders Firm, P.C.
      Debra Urbano-DiSalvo, Esq.